UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-vs-

ANTONIO L. RODRIGUEZ,

        Defendant.

REPORT AND RECOMMENDATION
23-CR-6173-EAW-MJP

---

## APPEARANCES

For the United States:        Charles E. Moynihan
        U.S. Attorney's Office - Rochester
        100 State Street
        Rochester, NY 14614

For the Defendant:        Wedade Wendy Abdallah
        Federal Public Defender
        28 East Main Street
        Suite 400
        Rochester, NY 14614

## INTRODUCTION

**Pedersen, M.J.** Defendant Antonio L. Rodriguez ("Defendant") is charged by way of an Indictment returned on September 14, 2023, with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Indictment, ECF No. 23.) The charges relate to a 20-gauge, Harrington & Richardson Pardner Pump slide action shotgun, bearing serial number NZ745385, and ammunition, namely, one (1) 20-gauge shotgun shell (Winchester) found by law enforcement on October 16, 2022, during his arrest. (*Id.*) The Indictment also contains a forfeiture allegation relating to the following:

1

    a. one (1) 20-gauge, Harrington & Richardson Pardner Pump slide action shotgun, bearing serial number NZ745385; and

    b. approximately one (1) round of 20-gauge ammunition (Winchester);

    c. approximately one hundred (100) rounds of assorted caliber ammunition (assorted manufacturers);

    d. approximately one (1) round of 20-gauge ammunition (Winchester);

    e. approximately six (6) rounds of 20-gauge ammunition (assorted manufacturers);

    f. approximately seventeen (17) rounds of 12-gauge ammunition (assorted manufacturers);

    g. approximately two (2) rounds of .22 caliber ammunition (assorted manufacturers); and

    h. approximately one (1) round of .22 caliber ammunition (Federal).

(*Id.*)

Defendant filed his omnibus motion on November 14, 2023 (ECF No. 31), and the government filed its opposition on November 21, 2023 (ECF No. 33). The undersigned held oral argument on the omnibus motion on December 12, 2023, and entered an order addressing all of the issues raised in Defendant's motion, except for reserving on Defendant's motion to dismiss the Indictment on the grounds that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him under the reasoning of the Supreme Court in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022). (Order, ECF No. 36; Def.'s Mem. of Law in Support of Omnibus Motion for Pretrial Relief at 2, Nov. 13, 2023, ECF No. 31-1.)

2

After considering oral argument and reviewing the motion papers the undersigned recommends that the Distrist Judge **DENY** Defendant's motion for dismissal of the Indictment (ECF No. 31-1).

## STANDARD OF LAW

On September 15, 2023, the Honorable Elizabeth A. Wolford referred this matter to the undersigned to address all pre-trial matters, including all pre-trial matters that a Magistrate Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those which a Magistrate Judge may hear and thereafter file a report and recommendation for disposition pursuant to Section 636(b)(1)(B). All procedural aspects of matters properly before the Magistrate Judge under the Order, including scheduling and the filing of briefs or other supporting material, shall be determined by the Magistrate Judge. All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. (Text Order of Referral, ECF No. 25.)

## DISCUSSION

*Legal History*
*The Supreme Court decides Heller, McDonald, and Bruen.*

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. This right gives the people "an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008).

But *Heller* only invalidated a District of Columbia law that "ban[ned] handgun possession in the home." 554 U.S. at 573–75, 635. The right to "bear arms" outside of the home remained undecided until *Bruen*.

After *Heller*, the Supreme Court incorporated this Second Amendment right onto the states through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). There, the Court invalidated several municipal statutes that banned handguns in homes. *Id.* at 749–50.

Finally, in *Bruen*, the Supreme Court recognized the right to bear arms outside of the home: "consistent with *Heller* and *McDonald*, [ ] the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10. The Second Amendment now applies to permit "the people" to keep and bear arms inside and outside of the home.

***Heller, McDonald, and Bruen all state that the Second Amendment right to keep and bear arms is not unlimited.***

The Supreme Court has unambiguously stated that Second Amendment rights are "not unlimited." *Heller*, 554 U.S. at 595; *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626) ("It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'"). The Court has taken pains to reiterate that "nothing" in its opinions "should be taken to cast doubt on" well-established "presumptively lawful regulatory measures." *Heller*, 554 U.S. at

4

626–27. Such presumptively lawful regulatory measures include "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.*, 554 U.S. at 626–27; *McDonald*, 561 U.S. at 786 ("repeat[ing]" the *Heller* "assurances"). As discussed below, the Supreme Court has embraced the sensitive place limitation and criminal background checks. It follows that the Court will also permit regulatory measures about felons and firearms.

### *Bruen calls for a new test.*

After *Heller* and *McDonald*, lower courts developed tests to determine the constitutionality of laws implicating the Second Amendment. Courts in this circuit would first "determine whether the challenged legislation impinges upon conduct protected by the Second Amendment," and second, would determine "the appropriate level of scrutiny to apply and evaluate the constitutionality of the law using that level of scrutiny." *United States v. Jimenez*, 895 F.3d 228, 232 (2d Cir. 2018). The Supreme Court rejected the second step of this analysis.

Despite courts' expertise in applying means-ends scrutiny, *Bruen* rejected it because it was a step of the framework courts developed post-*Heller* and *McDonald*. "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Bruen*, 597 U.S. at 19. In keeping with *Heller*, the Court in *Bruen* "essentially remove[d] the second step—the means ends balancing—from the inquiry," making the focus on "textual and historical analysis alone." *United States*

5

*v. Hampton*, --- F. Supp. 3d ----, ----, n.15, 2023 WL 3934546, at *10, n.15 (S.D.N.Y. 2023) (quoting *Bruen*, 597 U.S. at 19) ("Despite the popularity of this two-step approach, it is one step too many.")).

The *Bruen* Court then replaced the test courts had developed based on *Heller* and *McDonald*:

> The standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Bruen*, 597 U.S. at 24. The Court then indicated that historical tradition can be established by analogical reasoning, which "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphasis in original). Critically, "modern regulations that were unimaginable at the founding" need only be "relevantly similar" to an historical analogue. *Id.* at 28–29.

### *Findings of fact regarding Defendant's motion to dismiss the Indictment.*

Defendant seeks dismissal of the Indictment on the basis that the statute which he is charged with violating, 18 U.S.C. § 922(g)(1), violates the Second Amendment. (Def.'s Mem. of Law in Support of Omnibus Motion for Pretrial Relief at 2.) He asserts that the statute is unconstitutional on its face and as applied to him, relying on *Bruen*. (*Id.*) Defendant contends that "[p]ossessing a firearm and ammunition falls squarely within the bounds of the plain text of the Second Amendment and the government can point to no historical firearm regulation that

shows that [Defendant's] alleged conduct is excluded from the Second Amendment's protections." (*Id.*) Defendant further contends that the text of the Second Amendment does not exclude those who have been convicted of felonies. (*Id.* at 3.)

Defendant asserts that the term "people" as used in the Second Amendment and six other provisions of the United States Constitution includes "all members of a political community" and that, therefore, there is a "strong presumption that the Second Amendment right . . . belongs to all Americans." (*Id.*) Defendant further asserts that the government cannot overcome this presumption because it does not have "an antecedent in any founding-era firearm regulation." (*Id.*)

In opposition, the government contends that *Bruen* did not affect the holdings in *Heller* and *McDonald*, "which left felon disarmament regulations undisturbed." (Gov't's Resp. at 3, ECF No. 33.) Even applying the analytical approach set forth in *Bruen*, the government contends that Defendant's constitutional challenge is unavailing. (*Id.* at 4–5.) According to the government, Defendant's challenge fails because "[f]elons, by definition, fall outside the scope of the Second Amendment's text, which protects only law-abiding, responsible citizens." (*Id.* at 3.) Moreover, even if Defendant is within the scope of the Second Amendment the government contends Section 922(g)(1) "is consistent with the nation's historical tradition of firearm regulation on persons such as the defendant." (*Id.* at 5).

*Legal conclusions regarding Defendant's motion to dismiss the Indictment: Defendant's facial and as-applied challenges fail under controlling Second Circuit precedent.*

The undersigned is bound by *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013). There, the Second Circuit upheld the constitutionality of Section 922(g)(1) considering *Heller* and *McDonald*. The Court "turned what" might be "characterize[d] as 'dicta' in *Heller* and *McDonald* into binding precedent." *Hampton*, 2023 WL 3934546, at *12. The Second Circuit held based exclusively on the felon-in-possession language in *Heller* and *McDonald* that Section 922(g)(1) is constitutional. *See Bogle*, 717 F.3d at 281–82 ("Section 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons."). The Second Circuit reasoned that in *Heller* and *McDonald* "the Supreme Court clearly emphasized that recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id.* at 281 (quoting *Heller*, 554 U.S. at 626).

*Bogle* thus does not rest on the means-end analysis that the Supreme Court rejected in *Bruen*. Because it rests instead on the language in *Heller* and *McDonald*, the undersigned finds that it is binding. *See Hampton*, 2023 WL 3934546, at *12 ("With *Heller* and *McDonald* still in full force after *Bruen*, *Bogle* remains binding precedent within this Circuit on the constitutionality of [S]ection 922(g)."); *United States v. Baker*, No. 23-CR-6087CJS, 2023 WL 5511343, at *3 (W.D.N.Y. July 12, 2023), *report and recommendation adopted*, No. 23-CR-6087 CJS/MWP, 2023 WL 5510401 (W.D.N.Y. Aug. 25, 2023). This is the position of trial courts in the Second Circuit. *See United States v. Delima*, No. 2:22-CR-00111, 2023 WL 6443925, at *2 n.4

(D. Vt. Oct. 3, 2023) (collecting cases). Accordingly, the undersigned reports and recommends that the District Judge deny Defendant's motion to dismiss the Indictment.

### *In any event, the Supreme Court appears poised to uphold the "reasonable restrictions" language in Heller and McDonald.*

Were that not enough, a majority of Supreme Court justices seem poised to uphold cases like *Bogle*. *See Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) (noting that "six of the nine Justices pointed out that *Bruen* was not casting any doubt on" *Heller*'s language about convicted felons). Justice Kavanaugh, joined by Chief Justice Roberts, concurred in *Bruen*. He approvingly quoted *Heller*'s language that felon-possession prohibitions are "presumptively lawful" under *Heller* and *McDonald*. 597 U.S. at 80–81 (quoting *Heller*, 554 U.S. at 626–27) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations."). While the Supreme Court could reverse course in deciding related cases such as *United States v. Rahimi*, which deals with Section 922(g)(8), the Supreme Court seems to have intimated—for now—that Section 922(g)(1) is constitutional.

And as the Tenth Circuit noted in *Vincent*, the *Bruen* Court "apparently approved the constitutionality of regulations requiring criminal background checks before applicants could get gun permits." *Vincent*, 80 F.4th at 1201. The Tenth Circuit stated: "In preserving 'shall-issue' regimes and related background checks, the Court arguably implied that it was constitutional to deny firearm licenses to individuals with felony convictions. *Bruen*'s language thus could support an inference that the Second Amendment doesn't entitle felons to possess firearms." *Id.* at 1202; *but see*

*Atkinson v. Garland*, 70 F.4th 1018, 1022–23 (7th Cir. 2023) ("Since oral argument, the government has also urged us to conclude, without any historical analysis, that the plain text of the Second Amendment does not cover felons . . . *Bruen* left this complicated issue unresolved."). For this independent reason, the undersigned also rejects Defendant's argument and reports and recommends that the District Judge deny Defendant's motion.

With respect to Defendant's challenge on an as-applied basis, aside from stating that he challenges the constitutionality of Section 922(g)(1) as applied to him, Defendant does not provide any explanation or argument as to why this is the case. Instead, Defendant appears to solely challenge the constitutionality of the statute on its face.

Nevertheless, even if Defendant had provided reasons as to why Section 922(g)(1) was unconstitutional as applied to him, the undersigned rejects this argument because Defendant does not dispute his prior felony convictions. *See United States v. Baker*, No. 23-CR-6087CJS, 2023 WL 5511343, at *3 (W.D.N.Y. July 12, 2023), *adopted*, No. 23-CR-6087 CJS/MWP, 2023 WL 5510401 (W.D.N.Y. Aug. 25, 2023) (rejecting as-applied challenge where it was "clear that" the defendant's "conviction was 'punishable by imprisonment for a term exceeding one year,'" and thus fell in the ambit of Section 922(g)(1)). Nor could he.

Indeed, Defendant does not dispute that that he has previously been convicted of at least three felonies. In 2012, in Monroe County Court, Western District of New York, Defendant was convicted upon a plea of guilty for Burglary 3rd Degree and was

10

...

first sentenced to 5 years' probation but then resentenced to one year's imprisonment for violation of probation. (Compl. at 4, ECF No. 1-1.) In 2017, in Monroe County Court, Western District of New York, Defendant was convicted upon a plea of guilty for Burglary 3rd Degree and sentenced to two to four years' imprisonment. (*Id.*)[1] Finally, in 2022, in Monroe County Court, Western District of New York, Defendant was convicted upon a plea of guilty for Burglary 3rd Degree with sentencing still pending. (*Id.*) Since Defendant has not disputed these felony convictions any argument that Section 922(g)(1) is unconstitutional as applied to him fails on the basis that *Bogle* is controlling precedent, providing that Section 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons.

## CONCLUSION

Based on the foregoing, the undersigned reports and recommends that the District Judge **DENY** Defendant's motion to dismiss the Indictment. (ECF No. 31-1).

Pursuant to 28 U.S.C. § 636(b)(1), the Court hereby

**ORDERS**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not,

---

[1] It also appears that in 2020 Defendant pled guilty to Burglary 3rd Degree according to the Pretrial Services Report. But this conviction is not included in the Complaint and no sentencing information was reported.

presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED: January 18, 2024
Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge